Marjorie J. Campbell v. Commissioner.
Campbell v. Commissioner
Docket No. 5583-64.
United States Tax Court
T.C. Memo 1966-266; 1966 Tax Ct. Memo LEXIS 18; 25 T.C.M. (CCH) 1355; T.C.M. (RIA) 66266; December 9, 1966
*18 Held: Monthly payments in the total amount of $4,112.20 received by petitioner in 1961 pursuant to a separation agreement are taxable as income from alimony. Marjorie J. Campbell, pro se, Olathe, Kan.
Donald W. Geerhart, for the respondent. BRUCE Memorandum Opinion BRUCE, Judge: Respondent determined a deficiency in the income tax of petitioner for the year 1961 in the amount of $293.23. The issue is whether monthly payments in the total amount of $4,112.20 which were received by petitioner in 1961 pursuant to a separation agreement were periodic payments of alimony and therefore includable in their entirety in her gross income. An issue raised in the petition pertaining to respondent's disallowance of a certain attorney's fee apparently *19 has been abandoned by petitioner. All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner is an individual who resides in Olathe, Kansas. She filed her Federal income tax return for the year 1961 with the district director of internal revenue at Wichita, Kansas. Prior to April 11, 1961, petitioner was married to James W. Campbell (hereinafter referred to as James). Sometime prior to February 20, 1961, petitioner instituted a divorce action against James in the District Court of Johnson County, Kansas. On February 20, 1961, petitioner and James entered into a "Stipulation and Agreement" providing, as herein material, as follows: STIPULATION AND AGREEMENT THIS STIPULATION AND AGREEMENT, made and entered into this 20th day of February, 1961, by and between Marjorie Joy Campbell and James W. Campbell, hereinafter referred to as plaintiff and defendant respectively, WITNESSETH: WHEREAS, plaintiff and defendant were wife and husband and in consequence of irreconcilable differences said parties are now and have been for some time living apart and desire to live separate and apart during *20 the remainder of their natural lives; and WHEREAS, plaintiff has filed the above entitled action against the defendant in the District Court of Johnson County, Kansas, in which action plaintiff seeks judgment for alimony and other equitable relief and, WHEREAS, parties hereto are desirous of entering into a stipulation and agreement for the purpose of settling all of their property rights of every kind and nature whatsoever including inheritance, any obligation on the part of the defendant to support and maintain plaintiff, or in the event a divorce is granted plaintiff to pay her alimony, and defendant's obligation to support, maintain and educate the minor children of the parties hereto; NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained it is agreed by and between the parties hereto as follows: * * *
2. That plaintiff shall have as her sole and separate property, free from any right, title, interest, estate, lien or claim in or to the same by the defendant, the following described real property, to-wit: All that part of the West 240 feet of the North one-half (N 1/2) of Lot 23, except the North 110 feet thereof, OFFENBACHER AND *21 HAWORTH ADDITION to the City of Olathe, Johnson County, Kansas, subject to easements, restrictions, covenants and mortgage of record held by the First Federal Savings and Loan Association of Olathe, Kansas, having an unpaid principal balance thereon in the amount of $13,246.46, which plaintiff assumes and agrees to pay. 3. That plaintiff shall also have as her sole and separate property, free from any claim of right, title, interest, estate or lien, by the defendant in or to the same, all of the household goods and furniture, fixtures and incidentals thereto, situated at the home of the parties hereto at 704 South Grant Street, Olathe, Kansas, together with the 1960 Ford Station Wagon automobile, which is now in plaintiff's possession and registered in defendant's name, said station wagon being subject to a mortgage in the amount of $2,125.44, held by the Overland Park State Bank, which mortgage plaintiff agrees to assume and pay. Plaintiff shall retain as her separate property any bank, savings or checking accounts now held by her. 4. That defendant shall have as his sole and separate property the 1960 Mercury automobile now in his possession and registered in his name, as well *22 as any separate bank accounts now standing in his name and all stocks, bonds and interest in business ventures not herein specifically referred to. 5. That defendant shall pay to plaintiff, in lieu of all alimony to which she may otherwise be entitled the sum of $150.00 per month commencing on the first day of February, 1961, and continuing on the first day of each month thereafter until the death of plaintiff, or her remarriage, whichever event shall occur first. In the event of plaintiff's death or remarriage defendant's obligation to make any further payments under the terms of this paragraph shall immediately cease and he shall thereupon be released from making any further payment thereunder. These payments may be deferred and held in abeyance under the terms of paragraph 7. 6. That defendant also agrees to assign to plaintiff, in lieu of all alimony to which she may be otherwise entitled all of his interest in the payments to be received under a certain contract entered into on the 19th day of February, 1960, between the defendant and Floyd L. Boyd, Charles Boyd, and Boyd, Campbell, Boyd, Inc. Said contract provides that defendant is to receive a total of $411.22 per month *23 under certain conditions starting in April, 1960. Defendant covenants with plaintiff to do nothing to breach the terms of said contract. Defendant agrees to and does hereby instruct the Patrons Cooperative Bank as escrow agent to credit all payments under said contract to plaintiff's account. This is to be considered an absolute assignment to the plaintiff of the right to receive the payments but this defendant reserves the right, in the event of default under the terms of said contract, to personally assume all payments due to plaintiff under the terms of said contract and this assignment and to demand and receive from said escrow agent the return of his 100 shares of stock as set forth under Section III, headed SECURITY, all as more particularly set out in said contract. 7. The payments to be received under the terms of paragraph 5 herein shall be deferred and abated and defendant given credit therefor so long as the plaintiff receives at least the sum of $150.00 per month under the terms of the Boyd Contract. In the event of prepayment of said contract, this defendant is to receive one month's credit (in the amount of $150.00) for each $400.00 the plaintiff receives as prepayment. *24 Defendant shall receive credit in advance for any such sums received and shall be relieved from all further payments under the terms of this stipulation and agreement until such credit be exhausted. * * *
11. That this agreement is intended as a fair, full, final and complete settlement of all of the property rights of plaintiff and defendant and any right which plaintiff may have to alimony and support from the defendant, either past, present or future and it is the intention of the parties that except as otherwise provided herein, all liability of whatsoever nature upon the part of defendant to plaintiff shall cease and terminate absolutely upon the execution of this agreement. * * *
Under the contract referred to in paragraph 6 of the above agreement (hereinafter referred to as the Boyd-Campbell contract) James sold his interest in the assets of a certain partnership and one hundred shares of the capital stock in a corporation known as Boyd-Campbell-Boyd, Inc., to Floyd L. Boyd and Charles Boyd, the other stockholders in that corporation, and surrendered a promissory note owing by the Boyds in the amount of $11,243.86. He also covenanted with the corporation not to *25 compete in the super market business in Olathe, Kansas, for a period of 15 years. The contract further provided, in part: II. SALE PRICE AND MANNER OF PAYMENT. In consideration of the sale of said stock, said Buyers, jointly and severally, hereby promise to pay unto the Seller the total sum of Twenty-seven Thousand Five Hundred Dollars ($27,500.00), with interest at the rate of five per cent (5%) per annum as hereinafter set out: The sum of $217.47 including interest during the month of April, 1960, and a like sum each succeeding month thereafter until said principal sum of $27,500.00 with interest as aforesaid has been paid. The Buyers agree to make the monthly payments in four equal weekly installments payable on the first four Saturdays of each month. In consideration of Seller's covenant of non-competition, the Corporation hereby promises to pay unto the Seller the total sum of Twenty-seven Thousand Five Hundred Dollars ($27,500.00), as hereinafter set out: The sum of $3,000.00 as follows: $1,000.00 at the time of the execution of this agreement and four payments of $500.00 each to be made 30, 60, 90 and 120 days after the execution of this agreement. The balance of *26 $24,500.00 with interest at 5% per annum to be paid as follows: The sum of $193.75 including interest during the month of April, 1960, and a like sum each succeeding month thereafter until the said principal sum of $24,500.00 with interest as aforesaid has been paid. The Corporation agrees to make the monthly payments in four equal weekly installments payable on the first four Saturdays of each month. The Buyers hereby agree that if the Corporation fails to make the payments as hereinabove set out, that they will assume such payments personally. * * *
All deferred payments made hereunder are to be paid to Seller's account at the Patrons Co-Operative Bank of Olathe, Kansas, hereinafter designated as escrow agent. III. SECURITY. In order to secure the payment of all sums due under the terms of this agreement, the Buyers will immediately cause to be issued stock certificates of BOYD-CAMPBELL-BOYD, INC., representing the full one hundred (100) shares of stock sold by the Seller hereunder. Said certificates shall be assigned and endorsed in blank according to the form on the back of each of said certificates and shall be deposited with the Patrons Co-Operative Bank to be held *27 in escrow by said bank until all payments are made according to the terms of this agreement. If the Buyers or the Corporation shall fail to pay any installment for a period of thirty (30) days after said payment shall become due and payable, then the Seller may elect to declare the remaining balance of the purchase price to be due and payable at once and he shall notify the Buyers and the Corporation by mail of his election. The Buyers and the Corporation shall then have fifteen (15) days after receipt of said notice in which to pay any remaining balances due from either of them under the terms of this agreement, it being understood that the Corporation is not liable for the payment of any part of the stock and partnership purchase price. If any balance remains to be paid after the expiration of fifteen (15) days, then the Seller may elect to pursue his legal remedy for the recovery of said sums or may demand that the escrow agent deliver the one hundred (100) shares of stock to him. Demand for the delivery of said stock shall be in writing and shall constitute a waiver of all other remedies which the Seller could pursue against the Corporation or the Buyers under any of the terms *28 of this contract. A standard escrow receipt shall be signed by all parties hereunder but said escrow agreement shall not affect any of the terms or conditions of this agreement. * * *
IV. LIQUIDATED DAMAGES. In order to liquidate the amount of damages for breach or default hereunder it is expressly understood between the Buyers, the Corporation, and the Seller that should default in payments occur as hereinabove set out that the full one hundred (100) shares of stock shall again become the property of the Seller with no loss of shares for partial payment and all amounts theretofore paid by the Buyers or the Corporation shall be forfeited to the Seller if he elects to demand the stock as hereinabove set out. All the parties fully understand Seller's right to demand the stock from the escrow upon default in payments by either party. They agree to be bound by this forfeiture provision according to the terms hereof. V. MISCELLANEOUS PROVISIONS. * * * The Buyers and Corporation reserve the right and privilege to pay two or more installments on any balances due from either of them at any time without penalty of interest. By a written instrument executed on January 16, 1961, James *29 requested the Patrons Co-Operative Bank to deposit all further payments made under the Boyd-Campbell contract to petitioner's account. On April 11, 1961, petitioner was granted a divorce from James in the District Court for Johnson County, Kansas. The divorce decree provided in material part as follows: 8. That plaintiff and defendant have entered into a written Stipulation and Agreement dated February 20, 1961, which agreement has been submitted to and approved by the court. 9. The court finds that plaintiff and defendant have by the terms of said agreement each accepted the provisions made for each thereunder in full satisfaction of their respective property rights and interests and all marital rights including any permanent alimony to which plaintiff might otherwise have been entitled to have [been] determined by this court. The court further finds that there has been a full and complete disclosure of the property owned by either of the parties and that the plaintiff is fully cognizant of all of the terms of said agreement. That said agreement is fair and equitable to the parties and should be approved in all respects by the court, but the terms thereof are not incorporated *30 in or merged in this decree, said agreement being recognized by the court as contractual between the parties. * * *
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the property assigned to the specific parties by virtue of the Stipulation and Agreement be hereby assigned and declared to be their sole and individual properties as set forth in said agreement. During 1961 petitioner received payments under the Boyd-Campbell contract in the total amount of $4,112.20. On her Federal income tax return for 1961 petitioner reported interest income in the amount of $2,045.62 which she explained in an attachment to the return represented the interest portion of the aggregate payments received under the Boyd-Campbell contract during the period February 20, 1961, to December 31, 1961. In his statutory notice of deficiency dated August 14, 1964, respondent determined that the entire amount of $4,112.20 was taxable to petitioner in 1961 as income from alimony. The sole issue is whether the monthly payments in the total amount of $4,112.20 made under the Boyd-Campbell contract to petitioner in 1961 pursuant to the court-approved separation agreement with her husband are periodic *31 payments of alimony includable in her gross income under section 71(a)(2) of the Internal Revenue Code of 1954. [1]
Section 71(a)(2) provides: SEC. 71, ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - * * *
(2) Written Separation Agreement. - If a wife is separated from her husband and there is a written separation agreement executed after [August 16, 1954] the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. Petitioner has not filed any brief herein. In her petition she appears to rely solely upon the ground that the payments were received by her as assignee of her husband's rights in the payments *32 owing under the Boyd-Campbell contract. Since section 71(a)(2) provides specifically that periodic payments which are attributable to property transferred, in trust or otherwise, are includable, this argument is of no avail, as long as the payments are otherwise includable under that section. See also, Income Tax Regulations, section 1.71-1(c)(2). [2]
In order to be treated as alimony under section 71(a)(2), payments to a wife need only to be periodic and to have been made under a written separation agreement *33 and subsequent to its execution and because of the marital or family relationship. The payments in the instant case were made pursuant to paragraph 6 of the written agreement of separation executed by petitioner and her husband on February 20, 1961, for the purpose of settling all of their property rights and petitioner's rights to alimony and child support payments. Since the total amount of payments in 1961 equals ten times the amount of $411.22 owing each month under the agreement, it is apparent that the payments were received during the more than ten months remaining in 1961 after the execution of the agreement. Since the payments were payable monthly under the agreement, the required periodicity is present. Section 71(c)[3] cannot operate to make the payments installment payments of a principal sum since at the rate of $411.22 per month, or $4,934.64 per year, the approximate $50,000 remaining due under the Boyd-Campbell contract at the time of the separation agreement would not be paid in ten years. *34 The requirement that the payments be made because of the marital or family relationship means that they must be made in recognition of the husband's marital support obligation and not as part of a general property settlement. Daisy M. Twinam, 22 T.C. 83; Income Tax Regs., section 1.71-1(b)(4). Paragraph 5 of the separation agreement provides that James shall pay petitioner "in lieu of all alimony to which she may otherwise be entitled" the sum of $150 per month until petitioner's death or her remarriage. Paragraph 6 also provides that "in lieu of all alimony" James shall assign to petitioner all his interest in the payments to be received under the Boyd-Campbell contract, being $411.22 per month, and paragraph 7 provides that the payments owing under paragraph 5 shall be abated as long as petitioner receives at least the sum of $150 per month under the Boyd-Campbell contract. Settlement of the property rights of the parties is separately dealt with in paragraph 2 through 4 giving petitioner certain real estate, presumably the family home, all household goods in the family home, and one of the family automobiles. It is clear from the agreement *35 that the payments under both paragraphs 5 and 6 were intended to be alimony, with paragraph 6 being substituted during the term of the Boyd-Campbell contract for James' long-term obligation of support, and not part of the general property settlement contained in paragraphs 2 through 4. Consequently, the payments in issue were made because of the marital relationship and therefore meet all of the requirements prescribed by section 71(a)(2) for inclusion in petitioner's gross income. Decision will be entered for the respondent. Footnotes
1. Except as otherwise indicated, all section references hereinafter will refer to the Internal Revenue Code of 1954.↩
2. Sec. 1.71-1 Alimony and separate maintenance payments; income to wife or former wife. * * *
(c) Alimony and separate maintenance payments attributable to property. * * *
(2) The full amount of periodic payments received under the circumstances described in section 71(a)(1), (2), and (3)↩ is required to be included in the gross income of the wife regardless of the source of such payments. Thus, it matters not that such payments are attributable to property in trust, to life insurance, endowment, or annuity contracts, or to any other interest in property, or are paid directly or indirectly by the husband from his income or capital. * * *
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. * * *
(c) Principal Sum Paid in Installments. - (1) General Rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where Period for Payment is More Than 10 Years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.↩